UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

DEBORAH GAIL MARSH, )
)
    Plaintiff, )
)
v. )   Case No. CV410-273
)
GEORGIA DEPARTMENT OF )
BEHAVIORAL AND HEALTH )
DEVELOPMENTAL DISABILITIES, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Deborah Marsh, proceeding *pro se*, has responded to this Court's previous Order. Docs. 4, 5 & 6. The Court directed her to re-plead what looked like a Title I, Americans with Disabilities Act (42 U.S.C. §§ 12101, *et seq.*) claim,[1] "[b]ut after reviewing her hodgepodge of

---

[1] Under Title I of the ADA,

"[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to ... employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2009). In order to establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that: (1) she has a disability; (2) she is a qualified individual; and (3) the employer discriminated against her because of her disability. *See Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263

emails, work forms, hand-written assertions (etc.) and miscellaneous documents, the Court [was simply] unable to discern that." *Id.* She needed to comply with Fed. R. Civ. P. 8 & 10 because, the Court further explained, even if it granted her motion for leave to file her case *in forma pauperis* (IFP), doc. 1, it still must screen her complaint under 28 U.S.C. § 1915(e)(2)(B).[2] That means she must *plead* a legal claim against her ex-employer, the Georgia Department of Behavioral and Health

---

(11th Cir. 2007) (per curiam) (interpreting prior version of Act).

*Keeler v. Florida Dept. of Health*, 324 F. App'x 850, 856 (11th Cir. 2009) (footnote omitted). Marsh's discrimination claims appear to fit under Title I of the ADA, "which prohibits certain employers from discriminating on the basis of disability. *See* 42 U.S.C. §§ 12111-12117." *Lowe v. Hamilton County Dept. of Job & Family Services*, 610 F.3d 321, 325 (6th Cir. 2010). There is another portion of the ADA, *see* 42 U.S.C. §§ 12131-65 ("Title II") (banning public entities from discriminating against disabled people in provision of public services), and "the Eleventh Circuit has interpreted the broad language of Title II also to include claims of employment discrimination. *Bledsoe v. Palm Beach County Soil & Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998); *see* 42 U.S.C. § 12132 (prohibiting States from "subject[ing] [disabled persons] to discrimination")." *Williamson v. Georgia Dept. of Human Resources*, 150 F.Supp.2d 1375, 1379 (S.D. Ga. 2001); *but see Stine v. Pennsylvania State Police*, 2010 WL 4514326 at * 5 (M.D. Pa. Nov. 2, 2010) ("Title II of the ADA does not create a cause of action for employment discrimination").

[2] If a plaintiff proceeds *"in forma pauperis*, a district court is required to *sua sponte* determine whether the complaint: (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *See Alba v. Montford*, 517 F.3d 1249, 1251-52, n. 3 (11th Cir.), *cert. denied*, 129 S. Ct. 632 (2008)." *Walker v. Sun Trust Bank Of Thomasville, GA*, 2010 WL 165131 * 4 (11th Cir. Jan. 19, 2010).

Developmental Disabilities (GDBHDD).³  Doc. 4; *see also Jones v. Florida Power & Light Co.*, 2010 WL 1740713 at * 2-3 (S.D. Fla. April 29, 2010) (ADA pleading burden).

To that end, the Court explained that it is not sufficient simply to cite to various health problems and an adverse employment result. *Id.* (citing cases like *Joubert v. City of Jacksonville,* 2007 WL 496618 at * 3 (M.D. Fla. Feb. 12, 2007) (granting dismissal where the plaintiff merely alleged that he was a qualified individual with a disability without more specific factual allegations to support this conclusion)).  Hence, she must plead that she suffered, or was regarded as suffering, "a physical or mental impairment that substantially limits one or more of the major life

---

³  As another court explained: "Complaints by pro se plaintiffs, such as Plaintiff here, are read more liberally than those drafted by attorneys. *Osahar v. United States Post Office*, 297 Fed.Appx 863, 864 (11th Cir. 2008). However, a pro se litigant is not relieved of his obligation to allege sufficient facts to support a cognizable legal claim and the court may not rewrite a deficient pleading. *Id.*" *Rivero v. Taylor*, 2010 WL 3384913 at * 2 (S.D. Fla. Aug. 3, 2010).

Furthermore, and in contrast to past pleading practice in employment discrimination cases, plaintiff must plead more than threadbare recitals, legal conclusions and the mere possibility of misconduct.  *Bacon v. Georgia Ports Authority*, 2010 WL 5538515 * 1 (S.D. Ga. Dec. 17, 2010) (applying *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009), to dismiss an employment discrimination case at the pleadings stage, concluding that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, then the complaint has alleged -- but not shown -- that the pleader is entitled to relief.").

activities . . . ." 42 U.S.C. § 12102(2)(A).[4] *Grizzle v. Macon County, Ga.*, 2009 WL 2611319 at * 5 (M.D. Ga. Aug. 20, 2009). The purpose of § 1915(e)(2)(B) screening, after all, is to filter out still-born lawsuits.

## I. ANALYSIS

In response, Marsh -- again moving for leave to file IFP,[5] doc. 5 -- states that she has qualified for Social Security Disability, and has even collected back-payments on that score. Doc. 6 at 1. She also writes:

> I am hoping that you will see that I was harassed due to my medical conditions and deserved accommodation per The Disability Act that I filed.
>
> Also, if you look at the sequences of events, you will notice that when I took action on an issue, it was retaliated with an action from my supervisors.
>
> Also, I have included the original request for this court.

*Id.* at 1. Following her signature on this document, Marsh adds some

---

[4] The Act further specifies that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(A)(1). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(A)(2).

[5] The Court also directed her to elaborate on her claimed inability to pay the Court's filing fee. Doc. 4 at 3.

afterthoughts (in raw, unedited form):

> I am appealing the EEOC ruling, as there weren't sufficient information for them to make a determination. *I can't get to my information to prove my case.*
>
> My opinion is when I did the grievances on [GDBHDD's] Mr. Charles Ringling, Regional Coordinator and Annie Webb, Intake and Evaluation Manager; I sent them all the way up the latter.
>
> They were angry with me for having done this therefore; they retaliated against me by finding issues to reprimand me. I was given separation papers on May 24, 2010. I kept asking my PCP, Dr. Morarity, for a letter to explain my new health issues. He never provided me with the documentation when I constantly remember him that it was needed ASAP to be able to claim under the American Disability Act.
>
> I am including all documents that I provided the EEOC.

*Id.* at 2 (emphasis added). Marsh also would like this Court to appoint an attorney to assist her. Doc. 2.

As best the Court can tell (her filings are handwritten, and intermittently illegible), Marsh satisfies the IFP criteria, so her IFP motion (doc. 2) is granted. But her complaint must be dismissed, and no appointment of counsel is warranted. Hence, the Court denies her motion on that score, doc. 2,[6] as it is clear that Marsh would simply like a

---

[6] Marsh has made no effort to find an attorney on her own. Doc. 1 at 4. And the

5

"do-over" of her EEOC filing, as well as the pre-EEOC, reasonable accommodation that she sought from her employer[7] -- because she "can't get to my information to prove my case."[8] ADA litigation doesn't work that way, however. The claimant must get all of her eggs together in one

---

Court will not pressure one to step forward on a case that is basically dead on arrival. *See Williams v. Grant*, 639 F. Supp. 2d 1377, 1381 (S.D. Ga. 2009) (noting the "professional compulsion" lurking behind a judge's 28 U.S.C. § 1915(e)(1) request).

[7] The ADA's reasonable accommodation requirement is triggered only upon notice to the employer that the employee suffers from an ADA-level disability:

> A "disability" is defined by the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). The Equal Employment Opportunity Commission ("EEOC") has further defined "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Greenberg*, 498 F.3d at 1264 (quoting 29 C.F.R. § 1630.2(i)). For purposes of the third element, an employer unlawfully discriminates against an employee because of her disability by "not making reasonable accommodations to the [employee's] known physical or mental limitations" if the employee is otherwise qualified to perform her job and the accommodation would not impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A) (emphasis added); *see also Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir.2007).

*Keeler*, 324 F. App'x at 856. "By adoption of the Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008), effective 1 January 2009, Congress has expressly instructed courts that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals." Pub.L. No. 110-325, § 4(a)." *Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 883 n. 1 (11th Cir. 2009).

[8] For that matter, Marsh herself supplies documentation from her employer offering to accommodate her if only she would supply supporting documentation, but she did not. Doc. 1-1 at 21-22; *see also* Rule 10(c) (this is now part of her Complaint). She seems to reason that, because her personal physician stalled her in her efforts to get necessary documentation to her employer, the ADA somehow provides her with a second chance. It does not.

basket before advancing it before the EEOC, then before a federal court. *See Carty v. District of Columbia*, 699 F.Supp.2d 1, 2 (D.D.C. 2010) (discussing ADA administrative exhaustion requirements which require claimants to present their *entire* case first within administrative channels prior to filing suit).

Marsh, by her own allegations (her reasonable accommodation requests were denied because she could not medically support her claimed disability, and the EEOC would not have concluded against her claim had she gotten it more information), failed to do that here. And, while it is true that administrative exhaustion is an affirmative defense, *id.*, it is also true that dismissal is warranted where such a defense is clear on the face of the complaint. *See Hilliard v. Securitas Security Services, USA Inc.*, 2010 WL 2802428 at * 1 (S.D. Ga. Jun. 17, 2010), *adopted*, 2010 WL 2802432 (S.D. Ga. Jul. 14, 2010); *Campbell v. E & M Sec.*, 2010 WL 2233663 at * 1 (S.D. Ga. Apr. 23, 2010), *aff'd*, 2010 WL 5129664 at * 1 (11th Cir. Dec. 17, 2010).

For an ADA retaliation claim, which falls under ADA Title V,[9]

---

[9] "The ADA contains five titles: Employment (Title I), Public Services (Title II),

a plaintiff must show that (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) the adverse action causally was related to the protected expression. *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004). To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse act were at least somewhat related and in close temporal proximity. *Id.* at 1220.

*Sicilia v. United Parcel Service, Inc.*, 279 F. App'x 936, 939 (11th Cir. May 30, 2008). The ADA's retaliation provision does not open up a federal forum to sue over hurt feelings and routine flashpoints at work. A "substantiality" line must first be crossed. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("it is important to separate significant from trivial harms."). At a minimum, then, Marsh was required plead a causal link between her termination and her filing of her EEOC charge. *Id.* at 939-940; *see also Oestreich v. Wal-Mart Stores East LP*, 2009 WL 890729 at * 6 (N.D. Fla. Mar. 30, 2009). Hence, it is not

---

Public Accommodations and Services Operated by Private Entities (Title III), Telecommunications (Title IV) and Miscellaneous Provisions (Title V)." *Merchant v. Tennessee*, 2011 WL 441385 at * 5 n. 5 (M.D. Tenn. Feb. 7, 2011). "Title I of the ADA specifically addresses discrimination in the employment context. Under Title II of the ADA, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity.' 42 U.S.C. § 12132." *Hemby-Grubb v. Indiana University of Pennsylvania*, 2008 WL 4372937 at * 6 (W.D. Pa. Sep. 22, 2008). Title V encompasses retaliation claims. *McCollum v. Owensboro Community & Technical College*, 2010 WL 5393852 at * 1 (W.D. Ky. Dec. 22, 2010).

enough to plead that she requested accommodation for a claimed disability and received unfavorable responses from management. Instead, she must plead that she suffered an adverse employment action:

> For an action to be an adverse employment action, the plaintiff must show that an ultimate employment decision was made, or must make some other showing of *substantiality*. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). An ultimate employment decision has been defined as those "such as termination, failure to hire, or demotion." *Id.* (quoting *Stavropoulous v. Firestone*, 361 F.3d 610, 617 (11th Cir. 2004)). For conduct falling short of an ultimate employment decision, the conduct must, in some substantial way, "alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect [ ] his or her status as an employee." *Id.* (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)). When defining the level of substantiality required for a Title VII retaliation claim,[10] the Eleventh Circuit determined that an employee must demonstrate she suffered "a serious and material change in the terms, conditions, or privileges of employment" to show an adverse employment action. *Id.* at 971 (citing *Stavropoulous*, 361 F.3d at 617; *Bass v. Bd. of Cty. Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001); *Gupta*, 212 F.3d at 588; *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998); *Benefield v. Fulton County, Ga.*, 130 Fed. Appx. 308 (11th Cir.2005)). An adverse employment action is one that "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Id.* at 574.

---

[10] The ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), is similar to Title VII's prohibition on retaliation, *Shannon v. Postmaster General of U.S. Postal Service*, 335 F.App'x 21, 26 (11th Cir. 2009), so Title VII retaliation standards are permissibly imported into ADA cases. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

*Morales v. Georgia Dept. of Human Resources*, 2010 WL 4639279 at * 10 (M.D. Ga. Nov. 8, 2010) (footnote added).

And, she must satisfy the temporality requirement, since a lot of workplace events could be deemed "retaliatory," and thus flood the court system. So, substantive and temporal parameters must be met -- "that her employer had knowledge of the protected expression and 'that there was a close temporal proximity between this awareness and the adverse action.' " *Burgos v. Napolitano*, 330 Fed. Appx. 187, 190 (11th Cir. 2009)." *Id.*

It follows that where a plaintiff has filed an EEOC charge and was *not* terminated, she in fact was not deterred by management from exercising her rights. *Id.* at * 11 (collecting cases); *Burgos*, 330 F. App'x. at 190 (the defendant's actions were not materially adverse because the evidence showed that the plaintiff was not deterred in reinstating her EEOC claim). Marsh cannot simply urge this Court to review a mass of documents to "find" such a claim. "It is not the province of this Court to raise issues on behalf of litigants before it." *United States v. Burkhalter*, 966 F. Supp. 1223, 1225 n. 4 (S.D. Ga. 1997). For that matter, her own

complaint exhibits show that she was still employed as of December 18, 2010, doc. 1-2 at 7, months *after* filing her EEOC claim. Doc. 1-2 at 29. She obviously was not deterred and thus her retaliation claim fails on its face.

Finally, the Eleventh Amendment bars suit in federal court against an "arm of the state," except where such immunity is waived by the state or abrogated by Congress. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). The GDBHDD is an arm of the state, http://dbhdd.georgia.gov/portal/site/DBHDD/ (site visited Feb. 14, 2011), and the Court discerns no waiver or abrogation of its Eleventh Amendment immunity from money-damage based, ADA claims. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 367-68 (2001); *Keeler v. Florida Dept. of Health*, 324 F. App'x 850, 854 n. 2 (11th Cir. 2009) (noting district court ruling dismissing ADA money damages claim against similar Florida agency on Eleventh Amendment grounds); *Rylee v. Chapman*, 316 F. App'x 901, 904 (11th Cir. 2009) (upholding dismissal, on same grounds, of ADA claim against Georgia sheriff); *Jackson v. Friel*, 2010 WL 318369 at * 2 (D. Utah Jan. 19, 2010)

(dismissing ADA claim against state actor on Eleventh Amendment immunity grounds); *Williamson v. Ga. Dept. of Human Resources*, 150 F. Supp. 2d 1375, 1379-1382 (S.D. Ga. 2001).[11]

## II. CONCLUSION

Accordingly, the Court **GRANTS** plaintiff Deborah Gail Marsh's IFP motion, doc. 2, **DENIES** her motion for appointment of counsel, doc.

---

[11] These cases show that money-damage claims brought under Title I of the ADA can be dismissed on Eleventh Amendment grounds. Marsh seeks no injunctive relief, only (presumably, she does not say) money damages. But *Bledsoe* suggests Marsh's claim might also be heard under Title II, and Title II claims fetch different analytical treatment. *See Hale v. King*, 624 F.3d 178, 182-83 (5th Cir. 2010). There courts are instructed to avoid reaching the Eleventh Amendment issue if they can dispose of an ADA claim on the merits. *United States v. Georgia*, 546 U.S. 151, 158-59 (2006); *Zibbell v. Michigan Dep't of Human Servs.*, 313 F. App'x 843, 846-48 (6th Cir. 2009) (courts may consider the question of state immunity "only after finding a viable claim under Title II.") (cites omitted). Still, *Georgia* is distinguishable because, as noted by the court in *Clifton v. Georgia Merit System*, 478 F.Supp.2d 1356 (N.D. 2007), that case also turned on a coterminous constitutional violation, and "[n]o such independent violation of a stated constitutional protection is clearly implicated in the matter at hand." *Clifton*, 478 F.Supp.2d at 1367 n. 9.

Marsh's claims are employment-discrimination based, at a minimum sounding in the Title I context, so the Eleventh Amendment immunity analysis applied to it is fairly extended to her ADA Title V (retaliation) claim. *McCollum*, 2010 WL 5393852 at * 3. It is also logical to also extend it to any Title II claim she might have. *See Clifton*, 478 F.Supp.2d at 1368 (state employment discrimination actions under Title II of the ADA are barred by the Eleventh Amendment), cited in 1 AMERICANS WITH DISAB.: PRACT. & COMPLIANCE MANUAL § 2:161 (Feb. 2011); *see also Rooks v. Altamaha Technical College*, 2007 WL 2331830 at * 3 (S.D. Ga. Aug. 13, 2007) (applying *Williamson* to dismiss an ADA claim against a state entity on Eleventh Amendment grounds).

2, and recommends that her Complaint be **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED** this  14th  day of February, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA